**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Chadbourne MITCHELL,
Defendant-Appellant.**

**No. 75–1814.**

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1976.

Michael B. Standard, Eric M. Lieberman, New York City, for defendant-appellant.

John E. Clark, U. S. Atty., Joel D. Conant, W. Ray Jahn, Jeremiah Handy, LeRoy M. Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN, THORNBERRY *, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.**

GEE, Circuit Judge:

Mitchell appeals his conviction and five-year sentence for possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). The sole issues on this appeal concern the constitutional validity of a warrantless search of an automobile in which appellant was apprehended and in which the contraband was discovered. A panel of this court, though acknowledging the existence of probable cause to support the search, concluded that neither exigent circumstances nor the "border search" exception obtained and reversed Mitchell's conviction. Believing the views expressed by our panel dubious in light of recent Supreme Court authority, we took the case en banc and heard re-argument. We now vacate the panel's action and affirm the judgment below.

### Pertinent Facts

The panel opinion, reported at 5 Cir., 525 F.2d 1275, carefully sets out the facts leading up on the critical search, and we need not repeat these in detail here. Suffice it to say that in the spring of 1973, federal Drug Enforcement Administration officials in New Jersey were contacted by one Mancuso, who established to their satisfaction that he had been hired by an anonymous employer operating in a "cover" name to drive a truck from Mexico into the United States. Mancuso had already completed one such successful expedition, and another was in the offing. His suspicions had been aroused, however, by the unexpected munificence of a cash bonus delivered to him under mysterious circumstances after the first trip—$5,000. Investigation indicated these arrangements were likely a cover for some sort of a contraband-smuggling scheme. After various false starts and minor maneuvers unnecessary to detail, Mancuso advised the officials that he was to pick up the truck (which he accurately described in great detail, including its Vermont license plate) in Mexico on October 20, 1973, cross the border at a given time, and leave it on the parking lot of a specified motel in San Antonio, Texas. This he did and, as instructed by his employer, locked the vehicle, disposed of the keys, and departed the scene.

Shortly thereafter at about dusk, appellant Mitchell, who had been observed following Mancuso discretely all the way from Mexico, drove his rented automobile into the parking lot. The several agents who were lying in wait there saw him circle the parked truck, return to the public street, and park. About ten minutes later, accompanied by his dog, he re-entered the lot and parked alongside the truck. Producing a key, Mitchell then unlocked the rear door of the truck's camper body, as well as the

---

\* Because of illness, Judge Thornberry did not participate in the consideration of this case.

\*\* Because of illness, Judge Wisdom did not participate in the hearing or in the consideration of this case.

truck's cab. He then locked the dog in the cab and transferred the contents of his automobile to the truck's camper enclosure. Among these were several angle-irons and two hydraulic jacks, suitable for elevating the camper shell from the truck bed. These maneuvers were videotaped by the agents, in part by the use of special "starlight" lens equipment provided by them in anticipation of night work. His transfers completed, Mitchell locked the truck throughout and drove off in his automobile. At this time, about an hour had elapsed from his first appearance at the parking lot that Sunday evening.

About half an hour later, having turned in his rented car as was later ascertained, he returned in a taxi. When he re-entered the truck cab, seated himself, and "it appeared imminent that he was going to drive the truck away," agents converged on the truck and arrested him. About a forty-five minute wait then ensued while Customs' dogs trained to sense controlled substances were summoned. When their actions indicated the presence of such substances in or about the camper, the agents attempted to gain access to the area between the camper floor and the truck bed. After about a half-hour's effort and the removal of a hold-down bolt, they were able to pry up the camper and obtain a small sample of vegetable material which they recognized as marijuana. The camper shell was later removed by means of the jacks, and quantity of over 400 pounds of the substance was found hidden in the space between the camper floor and the truck bed. The agents neither had nor ever attempted to get a warrant authorizing any of these actions.

1. Indeed, his major argument, shortly to be dealt with, is that probable cause arose sufficiently early that the agents' failure to obtain a warrant based on it makes their actions a "planned warrantless search."

2. Mitchell's condition of mobility may be instructively compared with those of the defendants in *Cardwell* and in the more recent case of *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). In *Cardwell*, the car searched was parked on a lot, and the keys and

## Probable Cause: Exigent Circumstances?

In view of the above facts and others detailed in the thorough opinion of our panel, appellant wisely concedes the existence of probable cause to support the search.[1] He argues, however, that for two reasons there were not exigent circumstances justifying the agents' failure to obtain a warrant. We can only confess our congeniality to appellant's objection and our perhaps ingenuous dismay that at no time in the course of these experienced agents' elaborate and lengthy preparations to apprehend him did it appear to cross anyone's mind to seek a warrant. Clearly this would have been the better course; it does not follow necessarily, however, that the chosen one was fatal and that the guilty Mitchell must therefore go free. That it was foolhardy and unnecessary, however, is too plain for argument.

## Was the Truck Immobile?

Appellant's first contention, that by the time of the search the truck had been immobilized, exigence had passed, and a warrant could have been obtained at leisure, is foreclosed by *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Both of these authorities recognize that exigence is to be determined as of the time of seizure of an automobile, not as of the time of its search; the fact that in these cases sufficient time to obtain a warrant had passed between each seizure and the corresponding search did not invalidate either. At the time of the seizure here, Mitchell had completed loading the truck, disposed of his other vehicle, and assumed the driver's seat, ignition key in hand.[2] To require the

claim check were in the defendant Lewis' pocket at the time of his arrest. In *White*, the defendant had parked the car at the curb under police instructions when he was arrested. As *Cardwell* notes, 417 U.S. at 594, 94 S.Ct. at 2471 (plurality opinion), none of this matters much: "The fact that the car in *Chambers* was seized after being stopped on a highway, whereas Lewis' car was seized from a public parking lot, has little, if any, legal significance." But if it had, the mobility honors seem

agents to permit him to depart and then run him to ground on the public street would be ludicrous. Nor do we think the matter affected by the presence around the parking lot of ten or more surveilling agents rather than one or two. We have never before tested mobility of automobiles or exigence of circumstances by evaluating police capability to respond or the balance of forces deployed. Once commenced, the end of such a calculus would be evaluation of the opposing armaments and of the relative top speeds of the vehicles. We decline to embark on it.

### The "Planned Warrantless Search"

■ Appellant's major argument for want of exigence, and that chiefly relied on by the panel in invalidating the search, is that the search was deliberately planned as a warrantless one. By this is meant either (or perhaps both) that there was ample time after probable cause had arisen for the obtaining of a warrant but none was sought or that the agents, confident that they would be dealing with an automobile, deliberately chose to take advantage of the so-called "automobile exception" to the warrant requirement. We have already noted our incredulity that experienced agents would deliberately and needlessly precipitate all concerned into so vexed and parlous an area of constitutional law, a decision roughly comparable in prudence to determining whether an electric wire is charged by grasping it. In the first place, as the panel opinion correctly notes, there is no general automobile exception to Fourth Amendment requirements. In the second, and as a practical matter, any number of unforeseeable events could have frustrated the agents' reliance on the narrower excep-

tion which does in fact exist. A trip to the magistrate by one of the many agents would have rendered all secure. Instead, the agents chose to forego it and gamble that factors of exigence excusing that trip would arise.

As we have noted above, they did arise. And since they did, it does not matter *when* they did. As the Supreme Court noted in *Cardwell:*

> *Respondent contends that here, unlike Chambers, probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances.* Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practical moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of the arrest. Cf. *Chambers,* id., 399 U.S. at 50–51, [90 S.Ct. 1975, at 1980–1981, 26 L.Ed.2d 419]. *The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.* (emphasis added)

417 U.S. at 595–96, 94 S.Ct. at 2472 (plurality opinion). Cf. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).[3]

We deal here with a crime and a criminal, not with a sporting event. True, the constable put himself in the way to blunder, though he did not. Appellant would never-

to rest with Mitchell, if with anyone among the three of himself, Lewis and White.

**3.** We note in passing that the reference to *Coolidge v. New Hampshire,* 403 U.S. 443, 472 n. 27, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), cited by the panel opinion in support of its invalidation of the agents' action here as a "*planned* warrantless seizure," 525 F.2d at 1278, is inapposite. The Supreme Court was there speaking to the inadvertence element of the plain-

view doctrine, a well-established and integral part of that exception to the warrant requirement. Inadvertence or unforeseeability has never been recognized as an element of the exigent circumstances exception—rather the contrary, as the text references above to *Chambers* and *Cardwell* demonstrate. Moreover, contraband is specifically excluded from the reach of the sentence to which the footnote cited from *Coolidge* is appended.

theless have us disqualify him from the game because he chose a course less than the best, or perhaps because his heart was not entirely pure. But it was not a game, and we decline to do so.[4]

Appellant's conviction is

AFFIRMED.

RONEY, Circuit Judge, concurring in result only.

DYER, Circuit Judge, with whom GOLDBERG, GODBOLD and MORGAN, Circuit Judges, join, dissenting.

With deference I dissent. Nothing said in the majority opinion changes my conviction that the panel opinion applied correct legal principles to the undisputed facts.

I have found no case, *Watson, White* and *Cardwell* included,[1] that dispenses with exigent circumstances for a search of an automobile without a warrant. Other Circuits are in accord. *United States v. Farnkoff,* 1 Cir. 1976, 535 F.2d 661 [19 Cr.L. 2205]; *United States v. McClain,* 9 Cir. 1976, 531 F.2d 431 [18 Cr.L. 2521]; *United States v. Robinson,* D.C.Cir.1976, 533 F.2d 578 [18 Cr.L. 2534, en banc]; *United States v. Kemper,* 6 Cir. 1974, 503 F.2d 327, cert. denied, 1975, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824; *United States v. Bozada,* 8 Cir. 1973, 473 F.2d 389; *United States v. Bradshaw,* 4 Cir. 1974, 490 F.2d 1097, cert. denied 1974, 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139.

This is factually a unique case. From beginning to end the truck's trip varied not one iota from the detail worked out in rehearsal—about which all was known by the agents. Even the closed circuit television cameras were in place to photograph and record the arrest and seizure. The agents knew that someone (Mitchell) would get into the truck at the Holiday Inn and attempt to drive away. At the time of the seizure nothing had occurred or did occur

that was unanticipated or unexpected. It is semantic aphasia to define these circumstances as exigent.

I am as much against crime and criminals as the next judge. But this generalization has no place in determining whether the government has failed to prove its case because evidence upon which it relied is inadmissible as having been obtained in an unconstitutional manner. I would reverse the conviction.

---

4. Our disposition makes it unnecessary for us to reach the issue of whether the agents' procedures were valid as a "border search" under *United States v. Martinez,* 481 F.2d 214 (5th Cir. 1973), except insofar as we vacate the panel's treatment of this point.

1. The Supreme Court took pains to point out in *Cardwell* that it was "not confronted with any issue as to the propriety of a search of a car's interior," and emphasized that neither *Carroll* nor *Coolidge* was therefore apposite.