## Richmond

### LARRY DALE PATTY V. COMMONWEALTH OF VIRGINIA.

June 10, 1977.
Record No. 761249.
Present: All the Justices.

*P.H. Harrington, Jr. (Farley & Harrington,* on briefs), for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the Court.

Indicted for possession of marijuana with intent to distribute, defendant Larry Dale Patty was tried by the court without a jury, found guilty, and, by order of May 25, 1976, sentenced to seven years' imprisonment, with execution of five years suspended.

The issues on appeal are: (1) Was there probable cause for defendant's arrest? (2) Was the search of the motor vehicle in which the marijuana was found constitutional? (3) Was the testimony sufficient to identify the substance seized as marijuana? (4) Was the evidence sufficient to support the finding that defendant was in possession of the contraband with the intent to distribute it?

The facts are not in material dispute. Upon arriving at his place of business near 6:00 a.m. on February 11, 1975, Harold

Green, the operator of the Gainesville Mobil Service Center in Prince William County, found unattended on the parking lot a disabled locked Pontiac automobile bearing Texas license plates. Shortly after 7:00 a.m. on that day, Green received a telephone request from an anonymous male caller to repair the vehicle. No keys were left with the car, so in the process of working on it the doors were unlocked by use of a coat hanger. The repairs to a wheel bearing, a wheel cylinder and brake shoes were completed about 2:00 p.m. and, as the rear of the car was being lowered to the ground from its position on a bumper jack, "the trunk lid flew up." The compartment remained open for about 13 seconds before Green shut the lid. During this time, Green and at least two employees of the station, Green's son and Jacob Hecht, saw in the trunk what appeared to be marijuana.

The county police were called and about 3:00 p.m. Officer James R. Fisher, a narcotics investigator, arrived at the service station and questioned the informants about the contents of the trunk. To support his identification of the substance, Green's son told Fisher he had previously seen marijuana during a high school lecture on the subject; he, along with his father and Hecht, described in detail the characteristics of what they had seen. They indicated that it was plant material, that it was "brownish-green", that seeds were visible, and they described how it was packaged. The son drew for the officer a sketch of the seeds to aid the description.

Having been advised that the anonymous caller indicated the car was to be claimed between 4:00 and 5:00 p.m., the police decided about 3:30 p.m. not to approach the car for fear those in control of it "might come back and see us there and abandon the car". By about 5:00 p.m. additional officers had been called to the area and were in place to await the unknown person or persons who would come for the vehicle.

As security for payment of the bill before the car left the station, Green's son removed the ignition coil about 3:30 p.m.; this fact was known to the police, but the record is unclear when it was learned.

The police continued to wait in the area. Only two officers were actually on the station premises; Fisher was inside the station; the other officer waited in a car "alongside" the station. At approximately 8:10 p.m. a station wagon bearing Maryland license plates pulled to the station gas pumps. The vehicle was

occupied by the defendant, four other adults and a child. The defendant and another occupant, Butch Carroll, went to the Pontiac. Defendant entered the vehicle by the left front door, which was still unlocked, and positioned himself behind the steering wheel. Carroll stood between the opened door and the body of the car. While defendant attempted to start the car using an ignition key in his possession, the police moved on a prearranged signal and arrested without a warrant the defendant and his companions.

The trunk of the Pontiac was then pried open by the police, no key to the trunk having been found in defendant's possession. A search warrant had not been obtained. Recovered by the officers from the trunk was over 450 pounds of marijuana contained in about 175 packages, made of brown paper and transparent, as well as opaque, plastic. The photographs taken at the time and received in evidence show that two of the packages had been broken open, exposing the substance they contained.

Defendant argues there was no probable cause for his arrest, presumably implying the trial court erred in refusing to suppress the marijuana seized from the car. Specifically, defendant contends that the arrest was made solely on the "hearsay" information received by Fisher from "unreliable informants." He urges also the informers only had a glimpse of the contents of the open trunk before it was closed. This brief observation, he says, coupled with the fact that most of the plant material was concealed in packages, prevented the informers, even if they were reliable, from reaching a trustworthy conclusion as to the contents of the trunk. There is no merit to this contention.

In the first place, the information related to Fisher, as the Attorney General points out, came from *named* citizens who were not the typical paid police informants. As we said in *Guzewicz* v. *Commonwealth*, 212 Va. 730, 735, 187 S.E.2d 144, 148 (1972):

> "Public-spirited citizens should be encouraged to furnish to the police information of crimes. Accordingly, we will not apply to citizen informers the same standard of reliability as is applicable when police act on tips from professional informers or those who seek immunity for themselves. . . ."

*See Simmons* v. *Commonwealth,* 217 Va. 552, 555, 231 S.E.2d 218, 221 (1977). Secondly, the record shows that at least two of the citizen informers made their identifications based on prior personal experience with marijuana; Hecht testified he had seen it on "numerous" occasions and Green, Jr. had seen and been instructed about the substance during a high school lecture. While there is no requirement that a known reliable informant demonstrate the basis for his conclusion that the substance he observed was a narcotic, *Wheeler* v. *Commonwealth,* 217 Va. 95, 98, 225 S.E.2d 400, 403 (1976), the informants here spoke from experience and not from mere supposition. Finally, there is nothing inherently unreliable about an identification based on a 13-second examination of material arrayed openly and in transparent packages, as the marijuana was in this case.

Consequently, the information obtained from the three citizens, coupled with Fisher's personal observation of defendant's conduct in asserting control over the Pontiac, justified Patty's warrantless arrest; the officer had probable cause to believe a felony had been or was being committed by defendant. *See McKoy* v. *Commonwealth,* 212 Va. 224, 183 S.E.2d 153 (1971).

Defendant next argues the warrantless search of the locked trunk of the vehicle was unreasonable and hence unlawful. Recognizing the automobile-exigent circumstances exception to the warrant requirement, defendant says no urgency prevailed in this case to justify the failure of the police to acquire a warrant to search. Defendant contends there was adequate time to obtain a warrant between 3:00 p.m., when the police arrived at the scene, and the time of defendant's arrest five hours later. Pointing to the testimony of one of the officers who stated there was "no way" anyone would be allowed to "drive off in the car" after the "stake out" was established, defendant also argues the search was planned because actually, he says, the car was "seized", without being towed away, hours before defendant was arrested. Moreover, he urges, the police knew the car would not start because, near 3:30 p.m., the ignition coil had been removed. Patty also contends "at least seven police officers" were involved in watching the station premises and it was therefore unreasonable not to send one of the officers on the scene to obtain a warrant while the others maintained the "stake out."

■ While we agree the wiser course for the police would have been to acquire a search warrant, it does not necessarily follow that under these circumstances the failure to obtain one requires suppression of the evidence seized. The important factor here is that the police were dealing with contraband goods concealed and about to be illegally transported again in the automobile, and they knew it. The defendant's arguments on this phase of the case have been precluded by *Chambers* v. *Maroney*, 399 U.S. 42 (1970) and *Cardwell* v. *Lewis*, 417 U.S. 583 (1974), as explicated in *United States* v. *Mitchell*, 538 F.2d 1230 (5th Cir. 1976), *cert. denied* 97 S. Ct. 1578 (1977), a case strikingly similar to the case at bar. *See Carroll* v. *United States*, 267 U.S. 132 (1925); *United States* v. *Soriano*, 497 F.2d 147 (5th Cir. 1974). *See generally Cady* v. *Dombrowski*, 413 U.S. 433 (1973); *Schaum* v. *Commonwealth*, 215 Va. 498, 501, 211 S.E.2d 73, 75 (1975).

In *Mitchell*, defendant appealed his conviction for possessing marijuana with intent to distribute. The sole issue was the constitutional validity of a warrantless search on a motel parking lot of a motor vehicle in which defendant was apprehended and in which the substance was discovered. In 1973, federal drug enforcement officials were informed by one Mancuso of a plan to smuggle marijuana by motor vehicle from Mexico to San Antonio, Texas. Mancuso advised the officials that he had been employed to pick up the truck, which he accurately described in great detail, in Mexico on a certain day, cross the border at a given time and leave it on a specific motel parking lot in San Antonio. This he did and, as instructed by his employer, locked the vehicle, disposed of the keys and left the scene. At least ten government agents had established a "stake out" at the parking lot.

Shortly after Mancuso left the area, defendant entered the truck cab. Defendant, who had followed Mancuso from Mexico in a separate vehicle at a discreet distance, had been under continuous surveillance by federal agents for seven hours, from the time Mancuso and defendant crossed the border. As defendant was preparing to drive the truck out of the parking lot, the agents arrested him. Initially unable to locate any contraband in the vehicle, the agents finally, upon prying up a camper body from the truck bed, found 400 pounds of marijuana hidden in the space under the camper floor. No warrants were obtained authorizing any of these actions.

The Fifth Circuit Court of Appeals, sitting *en banc*, reversed an earlier panel decision reported in 525 F.2d 1275, and held constitutionally valid the warrantless search of the truck. There, as here, probable cause to support the search existed. There, as here, defendant argued that by the time of the search the vehicle "had been immobilized, exigence had passed, and a warrant could have been obtained at leisure." 538 F.2d at 1232. As here, the defendant in *Mitchell*, in support of his argument for want of exigence, contended the search was deliberately planned because ample time had passed after probable cause had arisen for procuring a warrant, yet none was sought. But the *Mitchell* court, citing *Cardwell*, rejected this argument. In *Cardwell*, defendant's car was seized on a public commercial parking lot. The Supreme Court stated:

> "Respondent contends that here, unlike *Chambers*, probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances. Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. Cf. *Chambers, id.*, at 50-51. The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." 417 U.S. at 595-96; 538 F.2d at 1233.

Most of the circumstances present in *Mitchell* likewise prevail here. We have (a) a motor vehicle which is (b) loaded with contraband seized (c) on private property open to the public; there was (d) the existence of probable cause to search after (e) a lengthy surveillance. The only significant fact favorable to defendant present here and not present in *Mitchell* is that here the Pontiac was momentarily inoperable because the ignition coil had been withdrawn and the car was not susceptible to immediate removal from the service station lot. But this condition was only temporary. When the car was seized, the trunk searched and the contraband seized, the police then, as

during the preceding five hours, had no idea when or how many persons would arrive on the scene to claim the vehicle and its cargo. It would be naive for experienced officers to assume that five adults would be the only ones interested in obtaining this contraband, presumably having a "street value" in the hundreds of thousands of dollars. Another car loaded with more of defendant's companions, one of whom may have had another key to the Pontiac's ignition, could have arrived at any time, paid the repair bill, required Green to replace the ignition coil and driven the load of marijuana away. In addition, the police could have anticipated that deadly weapons, not visible to the informers, were hidden under the contraband in the trunk. One of the group in custody may have had a key to the trunk affording ready access to the weapons. For the safety of themselves, and the public, sound judgment mandated an immediate search by the officers.

Accordingly, prompt action to search for and seize the contraband at the time of defendant's arrest was dictated by the exigencies of the situation and the police acted reasonably in so doing. *See United States* v. *McClain,* 531 F.2d 431 (9th Cir. 1976), *cert. denied* 429 U.S. 835 (1976). *See also Westcott* v. *Commonwealth,* 216 Va. 123, 125-26, 216 S.E.2d 60, 63 (1975).*

■ The record does not support defendant's third contention that the Commonwealth's expert witness, a chemist, did not personally perform the testing of the substance in question and hence was unqualified to identify it at trial. A fair reading of the evidence shows the expert conducted a chemical analysis of the material, assisted by a "new chemist", and made a microscopic examination of samples of the substance. Consequently, we find no error in admitting the chemist's testimony.

Finally, defendant argues the evidence was insufficient to convict him of possession of the substance with the intent to distribute it. In defendant's possession when arrested was a motor vehicle parking lot ticket issued at a Texas airport and

---

*Because of what we have just said, it is unnecessary for us to consider an alternative theory advocated by the Attorney General to sustain the warrantless search. That argument is based on Code § 18.2-249, permitting seizure and eventual forfeiture of a motor vehicle used in connection with the illegal distribution of controlled substances. That statute incorporates by reference Code § 4-56, which requires a search warrant for the search of such a vehicle. *See One 1963 Chevrolet Pickup Truck* v. *Commonwealth,* 208 Va. 506, 158 S.E.2d 755 (1968). *See also Cooper* v. *California,* 386 U.S. 58 (1967).

stamped 6:33 p.m. on the day before the arrest. Richard Schminsky, another occupant of the station wagon, the only witness testifying for the defense, stated he met defendant in Baltimore about 12:00 noon on the day of the arrest. From these facts defendant argues that "the only reasonable conclusion is that the Defendant caught a plane from Texas to Baltimore, Maryland, the night of February 10, 1975, making it impossible for the Defendant to have driven the car to the Mobil Gas Station in Gainesville, Virginia because of the great distance involved". Defendant further argues that "[a]ssuming, but not admitting, that Larry Patty did own the automobile," the effect of the trial court's holding is "that if someone loans his car to a friend and that friend carries hidden contraband in that car, and, the said car then breaks down and the owner shows up to pay for the disabled car, then that owner can be charged and convicted of the constructive possession of any contraband materials found hidden in a closed trunk." These contentions, likewise, are without merit.

■ We think the evidence establishes beyond a reasonable doubt that defendant had constructive possession of the marijuana in question; because the substance was subject to his dominion or control. *Ritter* v. *Commonwealth,* 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). *See Adkins* v. *Commonwealth,* 217 Va. 437, 229 S.E.2d 869 (1976); *Fox* v. *Commonwealth,* 213 Va. 97, 189 S.E.2d 367 (1972). We also believe the evidence fully supports the trial court's finding that such possession was with the intent to distribute, when the quantity of the contraband present in the vehicle is considered with all the other circumstances of the case. *Hunter* v. *Commonwealth,* 213 Va. 569, 193 S.E.2d 779 (1973).

For the sake of completeness, we recount the final leg of defendant's trip to the scene. Schminsky testified that during the day of defendant's arrest he met Patty and one Hill in "early afternoon" at a bar in Baltimore; that later in the day, upon Hill's request, Schminsky agreed to drive Hill "down to pick up a friend's car"; that during "that evening" he drove Hill and Patty to a motel in Manassas where Butch Carroll and an adult female and a child joined the group to go "to the gas station"; and that the arrest took place upon their arrival there.

Subsequent to Patty's arrest, the police found in the glove compartment of the Pontiac defendant's birth certificate and a

1973 bill of sale for the car showing "purchaser's name" to be "Larry Patty." Removed from defendant's wallet, which was on his person when arrested, was a large piece of folded paper containing numerous handwritten calculations.

As a part of his sufficiency of the evidence argument, defendant contends the birth certificate and the bill of sale, received in evidence over his objection, were inadmissible hearsay. These items were not offered for the truth of the matters stated therein but merely to link the defendant with the vehicle and hence were not hearsay. But more importantly, no error was assigned specifically raising that issue so we will not now notice such alleged error. Rule 5:21 (formerly Rule 5:7). Defendant also maintains that the paper containing calculations removed from his wallet was never actually received as an exhibit and thus should not be considered as evidence; an examination of that exhibit, a part of the record on appeal, shows that it was, in fact, properly admitted in evidence and initialed by the trial judge.

As we have said, the evidence was sufficient to convict. When defendant was arrested, he was in possession and control of the Pontiac; he was behind the steering wheel with the ignition key in his hand, attempting to start the car. A birth certificate and a bill of sale, both carrying defendant's name, were in the vehicle. Certain computations on the piece of paper found in defendant's wallet appear to relate to conversion of grams to pounds, typical measurements in the distribution of drugs, in amounts approximating the quantity of contraband found in the car. From these facts the trial court could infer defendant intentionally and consciously possessed the marijuana found in the trunk of the automobile with the intent to distribute it.

The judgment of conviction will, accordingly, be

*Affirmed.*