**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Beacher Drell ROACH,**
**Defendant-Appellant.**

No. 77–5656.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1979.

Robert K. Finnell, Rome, Ga. (Court-appointed), for defendant-appellant.

Julie Carnes, Asst. U. S. Atty., William L. Harper, U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

GEE, Circuit Judge:

Beacher Drell Roach, along with co-defendant Ronnie Lee Stewart,[1] was convicted of bank robbery by force in violation of 18 U.S.C. § 2113(a), (d) and carrying a firearm during commission of a felony in violation of 18 U.S.C. § 924(c)(2). His appeal raises several issues and requires a variety of responses. We find his first argument persuasive: because counsel was not present at the preliminary hearing and because no transcript of that proceeding is available, a remand is required to determine whether Roach suffered prejudice by reason of these circumstances. Additionally, though Roach has not raised the question, our precedent requires that we vacate his conviction and sentence on count two in light of *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Finally, in view of the distinct possibility that upon remand the lack of counsel and transcript will be found harmless error and the conviction on count one reinstated, we have reviewed Roach's other allegations of error and find them meritless.

The evidence tended to establish that Roach and Stewart, wearing masks and carrying guns, robbed a bank in Dallas, Georgia. Bank personnel soon discovered that the robbers had swallowed not only the worm but the hook: a security package containing a dye bomb designed to emit a red, tear-gas-like substance within minutes after removal. They reported this to police, along with a general description of the robbers and their getaway car, and the opinion that a third person had been waiting outside.

Brenda Jackson, Stewart's girlfriend, testified that Roach and Stewart had robbed the bank and that she was driving the getaway car when the dye bomb exploded, making it difficult for them to see. Roach switched places with Jackson and began driving. Stewart threw the shotgun out of the car and, after a bit, fled with the stolen money.

Minutes later a county deputy sheriff, alerted to the car description by radio, stopped Roach and Jackson and asked them to get out of the car. After they had exited, the deputy noticed a large red stain on the car's front seat, some gloves on the floorboard, and a white print shirt on the back seat, all in plain view through the car windows. Roach and Jackson were placed in the police car, and before any interrogation had begun Jackson asked the deputy, "Why are you arresting us?" Roach imme-

---

1. Stewart's conviction has been affirmed in an appeal that was separately considered. *United States v. Stewart*, 585 F.2d 799 (5th Cir. 1978).

diately cut in, "Shut up, you know why." After FBI agents arrived, the car was towed to the police station, where it was searched and the stained parts removed for laboratory analysis. The stain was found to contain the same chemicals used in the bank's security packs.

Stewart was apprehended a month later in Baton Rouge, Louisiana. In a statement admitted into evidence at trial, he told interrogating agents that Jackson was his girlfriend and that he had resided in Dalton, Georgia, until March 1977, when he heard from friends that he was wanted for bank robbery.

### I. Absence of Counsel at and Transcript of Preliminary Hearing.

■ The court file indicates that on March 30, 1977, Roach appeared before a magistrate, waived his right to counsel, signed a waiver-of-counsel form,[2] and requested a preliminary hearing which was set for April 8, 1977. When April 8 arrived,

Roach requested and received a continuance until April 14 to permit him to retain a certain attorney. By April 14, Roach had not secured counsel and sought another continuance. The magistrate refused and held the hearing that day, finding probable cause to bind Roach over to the grand jury, which returned an indictment five days later.

Ordinarily we would not feel compelled to remand on these facts.[3] Roach does not make very specific or cogent allegations that prejudice resulted from having no attorney at this "critical stage" in the proceedings against him.[4] Only one witness, an FBI agent, testified at the preliminary hearing, and he did not appear nor was his earlier testimony used at trial. Our ability to scrutinize the record and determine conclusively whether the error was harmless is hampered, however, by a second defect in the preliminary proceedings. The hearing was not taped or transcribed as required by 18 U.S.C. § 3060(f).[5] Moreover, despite a

---

2. On appeal Roach denies ever waiving his right to counsel; however, a signed and witnessed waiver as of March 30, 1977, appears in the magistrate's records.

3. Neither party explores whether Roach's delay in securing counsel was for legitimate reasons or whether it was such an obstructionist tactic as might amount to knowing, intentional waiver in some extreme situations. The government does urge that Roach waived the appellate issue of lack of counsel by failing to object at trial, according to the terms of the court's tentative acceptance of the magistrate's report on pretrial motions. We think, however, that Roach's formal motions to dismiss the indictment because counsel was lacking at the hearing and to receive a verbatim transcript of that proceeding were sufficient to preserve the issues for appeal. There can have been no waiver on the lack of transcript motion since Roach requested the tapes again before trial, and it was two days into trial before he discovered that no tape had been made. Since the two issues are uniquely intertwined in possibly prejudicing Roach's constitutional rights and because the district court had full opportunity to consider the matter, we find appellate review proper here.

4. The government asserts, but not too vigorously, that a preliminary hearing pursuant to Fed.R.Crim.P. 5.1 is not a "critical stage" triggering a suspect's right to counsel under the principles of Coleman v. Alabama, 399 U.S. 1,

90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), teaches that an informal hearing held solely to determine whether there is probable cause to detain an individual pending further proceedings is not such a stage. Though the purpose of a federal preliminary hearing is also simply to determine probable cause to hold a suspect until grand jury proceedings and not to be a defendant's discovery device, United States v. Coley, 441 F.2d 1299 (5th Cir.), cert. denied, 404 U.S. 867, 92 S.Ct. 85, 30 L.Ed.2d 111 (1971), other aspects of the federal hearing, such as a defendant's Rule 5.1 right to cross-examine witnesses against him and introduce evidence in his own behalf, could be severely hampered by lack of counsel, resulting in prejudice. Moreover, it was the lack of such adversarial attributes that in part led the Court to distinguish the Florida hearing in Pugh from the Alabama hearing in Coleman.

5. Proceedings before United States magistrates under this section shall be taken down by a court reporter or recorded by suitable sound recording equipment. A copy of the record of such proceeding shall be made available at the expense of the United States to a person who makes affidavit that he is unable to pay or give security therefor . . . .

Under Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), an indigent's

formal motion and renewed requests, the magistrate's meager handwritten notes were not turned over until two days after trial had begun.

In *United States v. Johnson,* 514 F.2d 92 (5th Cir.), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975), we held a magistrate's refusal to grant a verbatim transcript of preliminary hearing proceedings to be harmless error. But a large part of our reasoning was that the defendant's trial attorney had been present at the hearing and carried out cross-examination and that available tapes had been turned over four days before trial. Such circumstances are not present here. Thus, the combination of these two errors renders us uniquely unable to determine from the appellate record that Roach has not suffered prejudice.

Recognizing the great difficulty a validly convicted appellant faces in proving he suffered prejudice,[6] we nevertheless think he must be given the chance to try. We therefore vacate Roach's conviction on count one and remand for a determination whether Roach was prejudiced by the effects of lack of counsel and/or transcript. The test to be applied is the *Chapman v. California* harmless-error test. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). If prejudice is found, a new trial must be had. If, on the other hand, the error is found harmless, the count one conviction is to be reinstated since, as discussed below, there are no other grounds for setting aside that verdict.

II. *The* Simpson *Prohibition of Multiple Punishment.*

■ As was the case with his co-defendant Stewart, *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), requires the vacation of Roach's conviction and sentence on count two, brought pursuant to 18 U.S.C. § 924(c). With the panel that considered Stewart's appeal, we think it inappropriate to remand for re-sentencing, especially in view of the district court's

decision to impose less than the enhanced maximum under either count and to impose the sentences concurrently. *United States v. Stewart,* 585 F.2d 799, 801 n.5 (5th Cir. 1978); *United States v. Stewart,* 579 F.2d 356, 357 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978). *But see United States v. Shillingford,* 586 F.2d 372 (5th Cir. 1978).

III. *Warrantless Search and Seizure*

■ Pieces of the dye-stained car seat were introduced at trial after the court denied Roach's motion to suppress. Roach does not complain of the highway stop, the arrest, the viewing of the stained seat through the window, or even the car's impoundment. His argument seems rather to be that once he and Jackson had been arrested and the car taken to the station, there was no danger the evidence would be lost—no further exigency. Officers then had sufficient opportunity and thus, the argument goes, the duty to secure a warrant before further search or seizure of the front seat.

As we have noted in our en banc opinion in *United States v. Mitchell,* 538 F.2d 1230 (5th Cir. 1976), this analytic avenue was foreclosed by the Supreme Court in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). "[E]xigence is to be determined as of the time of seizure of an automobile, not as of the time of its search; the fact that in these cases sufficient time to obtain a warrant had passed between each seizure and the corresponding search did not invalidate either." 538 F.2d at 1232.

[4] That Roach complains of the seizure of a part of the car, rather than of the car itself or of a generalized search for evidence, does not require a different analysis. Where the initial intrusion that brings po-

---

6. See the views stated by Mr. Justice White and Mr. Justice Harlan in *Coleman, supra,* 399 U.S. at 17–18, 19–21, 90 S.Ct. 1999.

right to a transcript of the preliminary proceedings against him attains constitutional dimensions as well.

lice within plain view of an incriminating item of property is supported either by a lawful warrant or by one of the recognized exceptions to the warrant requirement, the seizure of that property for use as evidence is also legitimate. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–68, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Kaiser,* 545 F.2d 467, 476–77 (5th Cir. 1977). As the Court reiterated in *Cardwell,* 417 U.S. at 589, 94 S.Ct. at 2469, "Rather than property rights, the primary object of the Fourth Amendment was determined to be the protection of privacy." If Roach had insufficient expectation of privacy to withstand the right of the police to stop him on the highway and thereby view the car seat, he may not complain of seizures of property incident to those intrusions, unless perhaps the manner of search or extent of seizure is colorably challenged as unreasonable. Such claims are not present here.

### IV. *Admissibility of Co-Defendant Stewart's Statement.*

■ Roach contends that the admission of Stewart's post-arrest statement regarding Stewart's friendship with Jackson and the circumstances that caused him to leave Dalton denied Roach his right to confront witnesses against him. But the important principles established in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), attach only where the extrajudicial statement *implicates* the complaining co-defendant. Stewart's statement barely implicates himself, much less Roach, who wasn't even mentioned. Where a statement does not allude to the defendant, *White v. United States,* 415 F.2d 292 (5th Cir. 1969), *cert. denied,* 397 U.S. 993, 90 S.Ct. 1128, 25 L.Ed.2d 400 (1970), or where all references to the defendant have been deleted, *United States v. Gray,* 462 F.2d 164 (5th Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 452, 34 L.Ed.2d 303 (1972), his right of confrontation is not abridged.

### V. *Competence of Brenda Jackson to Testify.*

About three months before trial, Brenda Jackson received a psychiatric examination and was judged competent to stand trial. She was also found to have used drugs intermittently. Questioning Jackson's competence to be a witness against his client, Roach's attorney was given access to the psychiatric report, and the court granted his request for a preliminary examination into Jackson's current mental state. Though Jackson had been emotionally troubled during the previous three months and admitted using drugs on two occasions in that time, her answers to questions by government and defense attorneys were lucid and discriminating. The trial judge asked no questions, nor were expert witnesses employed. At the end of the hearing, the judge declared Jackson competent to testify.

Roach complains that these procedures were insufficient guarantees of a fair trial: another psychiatric examination should have been ordered; experts should have testified; the judge should have personally questioned Jackson since Rule 104 of the Federal Rules of Evidence requires him to decide preliminary questions regarding the "qualification of a person to be a witness . . . or the admissibility of evidence."

■ As to the necessity of a psychiatric examination, we have held that the district court has broad discretion in determining whether to order such examinations. *United States v. Jackson,* 576 F.2d 46 (5th Cir. 1978). Given the earlier examination and the further preliminary hearing, there can be no serious claim of abuse of discretion. Moreover, under the new Federal Rules of Evidence it is doubtful that mental incompetence would even be grounds for disqualification of a prospective witness. Rule 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules," and nowhere is mental competence mentioned as a possible exception. The Notes of the House Committee on the Judiciary state that one effect of Rule 601 is to abolish mental capacity as a ground for rendering a person incompetent

as a witness.[7] The Advisory Committee in their Notes on the Proposed Rules took a similar view, observing that the question of capacity was one "particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence."[8]

If these views are to be rigorously adhered to, there seems no longer to be any occasion for judicially-ordered psychiatric examinations or competency hearings of witnesses—none, at least, on the theory that a preliminary determination of competency must be made by the district court.[9] If the court finds the witness otherwise properly qualified, the witness should be allowed to testify and the defendant given ample opportunity to impeach his or her perceptions and recollections. That the court here went further and allowed the preliminary hearing into Jackson's competence is an added ground for affirming the jury's verdict rather than a reason to set it aside.

## VI. *Admission of Roach's Post-Arrest Statement; Sufficiency of Evidence.*

■ Roach's final two points of appeal require little discussion. He complains that testimony about his post-arrest rejoinder to Jackson, "Shut up, you know why [they are arresting us]," was irrelevant, prejudicial,

admitted without corroboration and that to explain the "harmless phrase" he would have had to surrender his privilege of silence. The statement was relevant because probative of his consciousness of wrongdoing. As for the charge of "prejudice," the whole point of the government's evidence is to lead the jury to infer guilt. Relevant evidence may be excluded on grounds of unfair prejudice only if its "probative value is *substantially* outweighed by the danger of *unfair* prejudice." Rule 403, Federal Rules of Evidence (emphasis added). No such danger is present here. Relevant, incriminating evidence has never been excluded merely because only the defendant himself could contradict it. Moreover, Roach's counsel was able to cross-examine the deputy as to possible innocuous interpretations of the remark.

■ . The last challenge Roach raises is to the sufficiency of the evidence. Brenda Jackson, corroborated by the stained car seat, testified that she participated in the bank robbery along with Roach and Stewart. Accepting, as we must, the jury's judgment as to her credibility, we find this more than enough to support the verdict against Roach.

VACATED; count one REMANDED for proceedings not inconsistent with this opinion.

7. H.R.Rep.No.93–650, 93d Cong., 2d Sess. 9 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7075, 7083. In deference to the strong state interests reflected in Dead Man's Statutes and other witness-disqualification rules, the Committee recommended and Congress adopted the further provision in Rule 601 requiring that witness competency be determined according to state law in any *civil* action in which state law may provide a rule of decision. *Id.*

8. The full discussion is as follows:

No mental or moral qualifications for testifying as a witness are specified. Standards of mental capacity have proved elusive in actual application. A leading commentator observes that few witnesses are disqualified on that ground. [Citation.] Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight

and credibility, subject to judicial authority to review the sufficiency of the evidence. Advisory Committee's Note to Rule 601, 28 U.S.C.A.

9. Perhaps a defendant might assert a colorable claim for a court-ordered examination on the different theory that it is necessary in aid of his defense, as to assist in challenging the credibility of the witness before the jury. In *Jackson, supra,* 576 F.2d at 49, we proscribed the introduction of psychiatric opinion for impeachment purposes *as an invasion of the jury's province.* Certainly, however, a psychiatric examination might prove useful in uncovering avenues by which a skillful cross-examiner might reveal a severely troubled witness' unreliability in distinguishing truth from fantasy. Because Roach had access to psychiatric reports barely three months old, authoritative reports on Jackson's conduct in intervening months, and her own testimony in the preliminary hearing, he had sufficient information for challenging her credibility.