## Richmond

### THEODORE G. FORE

#### V.

### COMMONWEALTH OF VIRGINIA

April 18, 1980.

Record No. 790625.

Present: All the Justices.

*Steven M. Garver* for plaintiff in error.

*Vera S. Warthen, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

In a jury trial, Theodore G. Fore was convicted of burglary and sentenced to serve seven years in the penitentiary. We granted him an appeal limited to the question whether his conviction was based upon evidence improperly seized in a warrantless search of an automobile.

The trial court conducted a pretrial hearing on Fore's motion to suppress evidence. Fore testified that in mid-November, 1977, he left a 1970 Buick, owned by him but titled in the name of his wife as Virginia Rosanna Donnelly, at Sheehy Ford in Prince Georges County, Maryland, for an estimate of the cost of brake repairs. He

handed the only set of keys to the Service Manager, gave his name as Bobby Wheeler, with a Maryland address, rented a car, and listed the telephone number of his mother-in-law, who resided in the District of Columbia, where he could be called. Fore testified that he subsequently returned a telephone call from Sheehy Ford, and refused to authorize the work because the estimate he received was too high. He was never served with a warrant authorizing the search of his car, but he was informed that the vehicle had been searched and seized by police officers in Prince Georges County.

Detective Alan L. Creveling, of the Prince Georges County Police Department, testified at the suppression hearing that he conducted the search of Fore's automobile. Prior to December 12, 1977, he had information that Fore, his wife, Christine, and one Ann Zerega had committed burglaries that the officer was investigating. Creveling knew that one of Fore's aliases was Bobby Jack Wheeler, and that one of Christine Fore's aliases was Virginia Donnelly.

Creveling testified that at 8:00 a.m. on December 12, 1977, he received a telephone call from Detective Bradley, of the District of Columbia Police Department, who stated that Christine Fore had been cooperating with him in his efforts to recover property stolen in various burglaries. Bradley described the articles that had been recovered. He also informed Creveling that Christine said that she and Fore had left at Sheehy Ford a 1970 Buick containing stolen property, including women's clothes, taken in burglaries committed in Prince Georges County. Bradley reported that Fore had been arrested and incarcerated in the District of Columbia and the car he was driving had been impounded. Creveling understood that Christine was not under arrest, and he was not aware of her whereabouts. Nor was he aware of Zerega's status, but he knew that she had cooperated with the Fairfax County police and that she had identified residences in Prince Georges County where she had been involved in burglaries with Fore.

After reviewing his file and conversing with one of the burglary victims, Creveling telephoned Bradley that some of the articles which Bradley had recovered matched the description of the victim's stolen property. Creveling then proceeded alone by automobile to Sheehy Ford, arriving just before 9:30 a.m., after travel time that he estimated at 20 to 30 minutes. The officer ascertained that a 1970 Buick registered in the name of Virginia Roseanne Donnelly had been left for brake repairs by a man who identified himself as Bobby Wheeler. The man had rented another car from Sheehy Ford to use while the Buick was being repaired. Creveling was shown the repair

order. A Sheehy Ford representative, who informed the detective that the repairs had been completed and the car "was ready to go", was disturbed because there had been ample time for the owner to claim the vehicle. The Buick, parked on the Sheehy Ford parking lot, was not locked; the trunk lock was missing, so that no key was required. Using his own screwdriver, Creveling opened the trunk and found stolen articles of clothing that were subsequently identified by the owners at Fore's trial in the court below. The officer seized the stolen property and impounded the vehicle.

Creveling testified that he first decided he had sufficient information to obtain a search warrant when he arrived at Sheehy Ford and discovered the presence of the Fore car, left there by Fore under his alias. However, the officer did not then have time to obtain a search warrant because he wished to remove any stolen property from the car before the vehicle left the premises. The nearest place where he could have found a District Court or Circuit Court judge to issue a search warrant, which he testified was required in Maryland, was 20 to 30 minutes from Sheehy Ford by car, and he could not be sure of the availability of a judge. Creveling did not know how many keys there were to the Buick.

At the conclusion of the suppression hearing, the trial court, relying upon *Thims* v. *Commonwealth*, 218 Va. 85, 235 S.E.2d 443 (1977), and *Patty* v. *Commonwealth*, 218 Va. 150, 235 S.E.2d 437 (1977), *cert. denied*, 434 U.S. 1010 (1978), denied Fore's motion to suppress. The burden is upon Fore to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.

█ As we pointed out in *Thims*, 218 Va. at 88-89, 235 S.E.2d at 445, under the Fourth Amendment, extended to the states by the Fourteenth Amendment, a warrantless search is per se unreasonable, subject to certain exceptions, including the automobile exception approved in *Chambers* v. *Maroney*, 399 U.S. 42 (1970). In the present case, therefore, the question is whether the warrantless search comes within the automobile exception to the usual warrant requirement of the Fourth and Fourteenth Amendments. Warrantless searches of automobiles are generally based upon the inherent mobility of the vehicle, and the diminished expectation of privacy of a motorist operating a vehicle on public streets and highways. *South Dakota* v. *Opperman*, 428 U.S. 364, 367 (1976); *United States* v. *Newbourn*, 600 F.2d 452, 454 (4th Cir. 1979). The exception applies only if probable cause supported the search and exigent circumstances justified

the officer's failure to obtain a warrant. *See Haefeli* v. *Chernoff,* 526 F.2d 1314, 1316 (1st Cir. 1975).

■ Fore concedes the existence of probable cause, but he argues that it arose from the telephone call made by Inspector Bradley to Creveling. Under Fore's theory, there was no justification for Creveling's failure to obtain a search warrant before he proceeded to Sheehy Ford. Although arguably Bradley's information furnished what a judge would have found to be at least marginal probable cause sufficient to support the issuance of a search warrant, it was reasonable for Creveling to seek verification by personal investigation to ascertain that his information was adequate. Bradley's information came from Christine, who was apparently cooperating with Bradley, but Creveling did not know the extent of her cooperation or where she was at that time. He knew that she had been involved in burglaries, and that she used at least one alias. Under the circumstances, we believe that Creveling acted reasonably and responsibly in following a conservative course of investigating further in person, rather than by telephone, to corroborate the information that he had received through hearsay. His discovery of the Fore vehicle in the location where he was told it had been left unquestionably gave him probable cause to believe the additional information relayed to him that the car trunk contained stolen property.

■ Even assuming that Creveling had probable cause to search before he proceeded to Sheehy Ford, he was not thereby precluded from making the search. Thus, in *Patty* v. *Commonwealth, supra,* we held that a warrantless search of a vehicle was not invalidated because the officers might earlier have obtained a search warrant. One of the authorities upon which we there relied, *Cardwell* v. *Lewis,* 417 U.S. 583 (1974), states the applicable principle at 595:

"Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment."

In *United States* v. *Newbourn, supra,* the United States Court of Appeals for the Fourth Circuit upheld the warrantless search of a vehicle on a public highway when information reasonably indicated that the car trunk contained weapons, although probable cause to support the issuance of a search warrant may have arisen earlier. The following rationale was applied, 600 F.2d at 457:

"As events develop and new information is received police officials are not required to hasten to a magistrate when a minimal probable cause showing arguably might have been made. Nor need they make detours to a magistrate's office at the risk that events might pass them by. At least when probable cause is marginal, particularization difficult and the opportunity to reach a magistrate uncertain, the failure to seek a search warrant does not render a vehicle search on the side of the public highway unlawful after ample probable cause to search has been obtained."

■ Fore contends that no exigent circumstances existed. He maintains that because he was in custody, Christine and Zerega were cooperating with the police, and the Buick was parked in a fenced lot guarded 24 hours a day, no danger remained that the vehicle or its contents would have been removed had Creveling left the premises and obtained a search warrant. The record, however, does not establish the essential facts upon which this argument is grounded. Creveling only knew that Fore was in custody and that Christine and Zerega were cooperating to some extent with the police. He understood that Christine was not in custody; he did not know Zerega's status. At the suppression hearing, no evidence was adduced that the Sheehy Ford parking lot was either fenced or guarded. At trial, Creveling testified that it was fenced but had entrances open to the public during regular business hours. He acknowledged that he knew the lot was locked and guarded at night. Even if this knowledge, however, is imputed to Creveling as of the time of the suppression hearing, a question that we do not here decide, it negates Fore's contention that Creveling could not reasonably have believed that he would run any risk of having the car or its contents removed if he left Sheehy Ford for a search warrant at 9:30 a.m.

The presence of the Fore car on a large commercial lot open for public business presented problems of accessibility and mobility similar to those in *Newbourn,* and not found in *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). When Fore left the Buick for repairs, it is reasonable to infer that he relinquished substantial expectations of privacy. Creveling reasonably suspected, as did the officers in *Newbourn,* that the vehicle under investigation contained contraband, unlike the automobile in *Coolidge* that was held to have been unlawfully searched without a warrant. Thus, he had reason to believe the car was being used for an illegal purpose, and would be used again to transport the stolen property. He knew that Fore had

been implicated in numerous burglaries. He could reasonably fear that Zerega, or Fore's mother-in-law, or some confederate or friend, might appear at Sheehy Ford, pay the repair bill, and remove the car. Nor would it have been unreasonable for Creveling to fear that Christine might remove at least some of the contents of the car. She had furnished information that the Buick contained property stolen in Prince Georges County. While it is unlikely that she would thereafter attempt to thwart the recovery of such Maryland property, she might have desired to remove any property stolen in Virginia, with which we are here concerned, in order to limit the exposure of her husband to only those criminal charges arising in Maryland.

We hold that the trial court did not err in finding that Creveling had probable cause to search Fore's automobile, and that exigent circumstances justified the officer's failure to obtain a search warrant. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

POFF, J., dissenting.

Finding no exigent circumstances to justify the warrantless search, and applying the principles underlying the views I expressed in my dissenting opinion in *Thims* v. *Commonwealth,* 218 Va. 85, 235 S.E.2d 443 (1977), I must dissent in this case.[1]

The majority state that "[t]he presence of the Fore car on a large commercial lot open for public business presented problems of accessibility and mobility similar to those in [*United States* v.] *Newbourn,* [600 F.2d 452 (4th Cir. 1979)]". The facts here are distinctly different from those in *Newbourn.* There, an automobile was parked alongside a public road. With probable cause to believe the vehicle contained a cache of stolen firearms, police officers arrested the occupants of the car and searched its trunk. The *Newbourn* court held the search valid as a "protective search" authorized by *Cady* v. *Dombrowski,* 413 U.S. 433 (1973), and as a "fleeting vehicle search" approved in *Chambers* v. *Maroney,* 399 U.S. 42 (1970). 600 F.2d at 458. Obviously, the search in the instant case was not a *Cady* search. Nor was it a "fleeting vehicle search". Such a search occurs

---

[1] The threshold question in any Fourth Amendment case is whether the defendant had a "legitimate expectation of privacy" in the place searched or the property seized. *Rakas* v. *Illinois,* 439 U.S. 128, 148-49 (1978). Although the majority observe that Fore "relinquished substantial expectations of privacy" when he left the automobile at the garage for brake repairs, their inquiry into the legitimacy of the search tacitly recognizes that defendant retained a legitimate expectation of privacy as to the trunk.

only when the police encounter a suspect vehicle parked on or near a public road or in a place to which the public has virtually unlimited access.[2] *See, e.g., Cardwell* v. *Lewis,* 417 U.S. 583 (1974); *cf. Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). Moreover, the dominant exigent circumstance present in *Newbourn, viz.,* firearms posing potential danger to both the investigating officers and the public, is absent here.

The exigency found by the majority is the possibility that the car might have been driven from Sheehy Ford's lot or the possibility that some of the contents of the trunk might have been removed while Detective Creveling sought a search warrant. I consider these possibilities highly improbable. Creveling knew that Fore, who was in custody, could not move the vehicle. He knew that Christine Fore had informed the authorities of the car's location and the nature of its contents; it seems unlikely that she would then attempt to remove the vehicle from the lot or take the stolen property from the trunk. Creveling was also aware that defendant's other confederate, Ann Zerega, had admitted her involvement in defendant's felonious career and had identified the scenes of several burglaries. Given these circumstances, Creveling had no cause to believe she would remove either the car or its contents. So far as defendant's mother-in-law is concerned, there was nothing to show that she even knew about the car, much less that she might pay the repair bill and drive the car away. Furthermore, the Commonwealth introduced no evidence to show that the car was accessible to anyone other than its owners, its bailee, and the police.

As the parties recognized below, the burden was on the Commonwealth to demonstrate the justification for an exemption from the warrant requirement. *Arkansas* v. *Sanders,* 442 U.S. 753, 760 (1979). The prosecution does not satisfy its burden simply by asking the courts, with hindsight, to discover an exigency. A circumstance is exigent only when it poses a realistic potential for danger. To justify the type of warrantless search conducted in this case, the prosecution must show a reasonable likelihood that the evidence seized would have been lost if the police had taken time to obtain a warrant. To the extent *Patty* v. *Commonwealth,* 218 Va. 150, 235 S.E.2d 437 (1977), *cert. denied,* 434 U.S. 1010 (1978), and *Thims* v. *Commonwealth, supra,* relieve the Commonwealth of its burden, those cases should be overruled.

---

[2] Language in some opinions strongly suggests that such circumstances, standing alone, justify a warrantless search. *See Cady,* 413 U.S. at 441-42; *Newbourn,* 600 F.2d at 454, 458; *see also Arkansas* v. *Sanders,* 442 U.S. 753, 760-61 (1979).