COURT OF APPEALS OF VIRGINIA

Present:  Judges Bray, Clements and Agee
Argued at Salem, Virginia


JONATHAN P. BIGNELLI

                                      MEMORANDUM OPINION* BY
v.    Record No. 0690-00-3      JUDGE JEAN HARRISON CLEMENTS
                                          SEPTEMBER 11, 2001
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                       Porter R. Graves, Jr., Judge

           Frank A. Mika for appellant.

           H. Elizabeth Shaffer, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Appellant Jonathan P. Bignelli was convicted in a bench trial

of manufacturing marijuana not for his own use in violation of

Code § 18.2-248.1(c), possessing with intent to distribute

methylenedioxymethamphetamine, a Schedule I controlled substance,

in violation of Code § 18.2-248(C), and possessing with intent to

distribute more than one half ounce but less than five pounds of

marijuana in violation of Code § 18.2-248.1(a)(2).  On appeal, he

contends the trial court erred in denying his motion to suppress

the drugs and other evidence seized by the police in a

nonconsensual, warrantless entry and search of his home.  Finding

no error, we affirm the judgment of the trial court.
_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

When a motion to suppress is reviewed on appeal, we examine the records of both the suppression hearing and the trial to determine whether the evidence was lawfully seized. DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542 (1987). "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

-

Bignelli first argues that, based on the information they obtained from the traffic stop, the officers had probable cause sufficient to procure a search warrant before proceeding to his house.  Their failure to do so, despite having ample time to approach a magistrate with the information they had obtained, was, Bignelli contends, without justification.

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which [the officer] has reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."  Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975). "Probable cause is assessed by considering the totality of the circumstances pertaining to the facts known to the officer at the time."  United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

Here the evidence proved that on May 11, 1999, at approximately 1:00 a.m., Trooper Rob Greer made a traffic stop on Route 659 in Rockingham County of a vehicle travelling 48 miles per hour in a 35 mile-per-hour zone.  Before the stop, the vehicle swerved several times across the yellow line.  Four people were in the car.  The young woman who was driving smelled of alcohol and was very lethargic.  Further investigation by the police led to the discovery of a metal box containing marijuana and a glass pipe with marijuana residue.  Two of the passengers were arrested for possession of marijuana.

-

One of the passengers told Trooper Kevin Richards, who together with Sergeant Baylor and Deputy Morris came to assist Greer, that he got the marijuana in the metal box at a party in Grottoes. He gave Trooper Greer the address of 93 Gray Street. Another passenger told Greer that there were two kegs of beer at the party and that every person at the party was "probably not" twenty-one years old. Both passengers were under twenty-one years of age and admitted they had drunk alcohol at the party. The officers did not previously know the persons stopped that night.

After the arrests, Trooper Greer called an assistant Commonwealth's attorney for advice. The assistant Commonwealth's attorney told Greer that the information Greer had received might be unreliable or stale. Based on that advice, the four officers and the assistant Commonwealth's attorney went to the Gray Street address they were given to further investigate the reliability of the information of illegal narcotic and alcohol use. They arrived at 2:46 a.m.

Assuming, without deciding, that the information obtained by Greer during the traffic stop constituted probable cause sufficient for the issuance of a search warrant, we hold that it was reasonable nevertheless for the officers to go to 93 Gray Street, Bignelli's home, to verify by personal observation the reliability and adequacy of the information they had received. See Fore, 220 Va. at 1011, 265 S.E.2d at 732 (holding that, even though information the officer had obtained through hearsay was

-

arguably sufficient to obtain a search warrant, officer acted reasonably and responsibly in verifying the adequacy of that information by personal investigation). Furthermore, the officers' failure to obtain a search warrant at the earliest practicable moment did not, without more, negate the legality of the subsequent search. See Verez v. Commonwealth, 230 Va. 405, 410, 337 S.E.2d 749, 752 (1985); Patty v. Commonwealth, 218 Va. 150, 155-57, 235 S.E.2d 437, 440-41 (1977).

Bignelli next argues that, upon arriving at his house, the officers improperly went around to the side yard of the house, where there was no sidewalk and which was almost completely blocked from the street by a shed and bushes, rather than walking up the sidewalk to the front door. The officers, Bignelli contends, intentionally trespassed on the curtilage of his property in order to obtain probable cause and, in so doing, created the exigent circumstances that precipitated their entry into his home without a warrant. Thus, Bignelli concludes, the Commonwealth should be precluded from relying on the exigent circumstances the officers created by their illegal trespass.

The Fourth Amendment protects against unreasonable searches and seizures. "A warrantless entry into a dwelling is presumptively unreasonable." Servis v. Commonwealth, 6 Va. App. 507, 514, 371 S.E.2d 156, 159 (1988). The Fourth Amendment protections that apply to the home also apply to its "curtilage." Jefferson v. Commonwealth, 27 Va. App. 1, 15, 497 S.E.2d 474, 481

-

(1998) (citing <u>Oliver v. United States</u>, 466 U.S. 170, 180 (1984)).

"Curtilage" includes one's yard.  <u>Wellford v. Commonwealth</u>, 227

Va. 297, 302, 315 S.E.2d 235, 238 (1984).  "The protection

afforded the curtilage is essentially a protection of families and

personal privacy in an area intimately linked to the home, both

physically and psychologically, where privacy expectations are

most heightened."  <u>California v. Ciraolo</u>, 476 U.S. 207, 213

(1986).

> That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.  Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible. "What a person knowingly exposes to the public, even in his own home . . ., is not a subject of Fourth Amendment protection."

<u>Id.</u> (citations omitted) (quoting <u>Katz v. United States</u>, 389 U.S.

347, 351 (1967)).

Here, the evidence established that, when Trooper Greer

arrived at 93 Gray Street, he could see the front and side doors

of Bignelli's house from Gray Street.  No fences or other

obstructions blocked his view of the yard.  He saw five to ten

people in the front yard on the north side of the house walking

around with "bottles of alcoholic beverages" and "clear plastic

-

cups of a liquid beverage." Having confirmed the information from the traffic stop that a party was indeed in progress at this address and that alcohol was in fact being served, Greer walked into the yard seeking to locate someone who lived at the house or the person in charge of the party. He asked one of the people in the yard if he knew who lived there, but the person said he did not. The front porch was "totally dark," but Greer could see light coming from the side door. He, therefore, walked through the yard up to the side door.

We find, as did the trial court, that Bignelli had no expectation of privacy in his yard, which was knowingly exposed to the public. It was reasonable, therefore, for Trooper Greer to enter the yard to further investigate his suspicions of illegal activity based on the information he had received from the traffic stop and his observations from the public street of the activity in Bignelli's yard. Unable to locate the property's residents or the party's host in the yard, it was also reasonable for Greer to go to the residence's apparent point of ingress and egress-the side door where the light was on-to locate the residents or host. See Alvarez v. Montgomery County, 147 F.3d 354, 358-59 (4th Cir. 1998) (holding that entry by police officers investigating a complaint of an underage drinking party into private backyard to look for homeowner was reasonable because officers had a legitimate reason unrelated to a search of the premises to enter the yard and a sign indicated the party was in backyard). We

-

conclude, therefore, that the officers did not illegally trespass on the curtilage of Bignelli's property.

"Exigent circumstances . . . may justify as reasonable a warrantless entry into a dwelling [and] a search of the interior . . . ." Verez, 230 Va. at 410, 337 S.E.2d at 752. "Exigent circumstances justifying a warrantless entry and search exist only where the police have probable cause to obtain a search warrant but, due to the nature of the situation, are precluded from doing so." Servis, 6 Va. App. at 514-15, 371 S.E.2d at 159. Relevant exigent circumstances that might justify a warrantless entry include "the officers' reasonable belief that contraband is about to be removed or destroyed," "information that the possessors of the contraband are aware that the police may be on their trail," "whether there is, at the time of entry, a clear showing of probable cause," and "whether the officers have strong reason to believe the suspects are actually present in the premises." Verez, 230 Va. at 410-11, 337 S.E.2d at 753.

> We have held that in determining whether exigent circumstances were sufficient to overcome the presumption of unreasonableness and justify a warrantless entry, the court must examine the circumstances as they reasonably appeared to the law enforcement officers on the scene. "The officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made."

-

Id. at 411, 337 S.E.2d at 753 (quoting Keeter & Bray v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981)).

Applying these principles, we conclude that the evidence before us amply supports the trial court's determination that the Commonwealth met its burden of proving exigent circumstances sufficient to justify the police's warrantless entry and search of Bignelli's house.  When Trooper Greer reached the lighted side door, it was open.  Looking inside, Greer could see ten or twelve people in the kitchen, sitting at a table on which there were half-full bottles of beer, plastic cups, and cigarettes.  Greer also saw a metal keg, which he recognized as a beer keg, in plain view in the same room.  He asked the group to find the person who lived there or was in control of the house.  Less than a minute later, Bignelli ran downstairs and met Greer at the door.  After determining that Bignelli rented the house, Greer explained to him that he had received information that there was illegal consumption of alcohol and possible drug use taking place at the party.  When Greer asked Bignelli if he knew whether everyone in attendance was at least twenty-one years old, Bignelli said he did not know but he hoped so.  During the conversation with Bignelli, Greer "detected a strong odor of what [he] believed to be marijuana smoke" coming out of the house.  "It was," according to Greer, "a very thick cloud of smoke."  When Greer asked Bignelli about the smoke, Bignelli denied it was marijuana.  During the

-

conversation Bignelli was "extremely nervous" and stood in the doorway with his arms outstretched across the open door.

The trooper then asked Bignelli to come out into the yard. When Bignelli did so, Greer asked him about the marijuana odor again, and Bignelli again denied the odor was marijuana. Trooper Greer asked permission to search the residence. When Bignelli refused, Greer told Bignelli he could apply for a search warrant. Bignelli ran back to the door and once again stood in the doorway with his arms outstretched across the door. Greer, accompanied by Trooper Richards, went back to the door. When Richards reached the porch outside the door, he also smelled a very strong odor of marijuana. Again, Greer asked for consent to search the residence and stated he could apply for a search warrant. Bignelli again refused permission.

At that point, Greer saw a woman seated at the table in the kitchen jump up and run out of the room. Greer heard footsteps on the stairs, heard a door slam, and then heard a toilet flush repeatedly. Richards also saw people running upstairs and through the house and heard the toilet flush. Fearing that evidence of illegal drugs was being destroyed and deciding that prompt action on their part was necessary to prevent the further destruction of evidence, the officers entered the house. Pushing Bignelli and a woman out of the doorway, they ran upstairs to the bathroom, where Greer found a woman flushing green plant material down the toilet.

-

Given the information they received during the traffic stop and what they observed, smelled, and heard at Bignelli's house, we find that the officers reasonably perceived exigent circumstances warranting their immediate entry into Bignelli's house to search for evidence before it could be destroyed. Accordingly, their immediate entry and search was, we conclude, reasonable and justified.

Bignelli testified in his own defense and called six witnesses who were present at the party that night. They denied much of the officers' testimony, including that marijuana could be smelled in the kitchen or outside the house, that people were running through the house and up the stairs, that the toilet was being flushed, that the officers could even hear the toilet being flushed from their location just outside the side door, and that someone was in the bathroom when Greer went in.

The trier of fact, however, is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve in part or in whole the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Thus, the trial court was not required to accept Bignelli's version of what occurred. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

-

Finally, Bignelli contends that, even though he expressly gave his consent to the officers to search the house after they had entered the residence and gone upstairs, his consent was not valid because it was coerced by the officers' show of force in entering and searching his home.  We disagree.

A person may voluntarily consent to a warrantless search of his person, property, or premises.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  "The test of a valid consent search is whether it was 'freely and voluntarily given.'"  Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998) (quoting Bumper, 391 U.S. at 548).  "When a defendant challenges the validity of a consent to search, the burden of proof is on the Commonwealth to prove that it was freely and voluntarily given."  Reynolds v. Commonwealth, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990).  Whether a particular consent to search was in fact voluntary or was the product of coercion is a question of fact "to be determined from the totality of the circumstances."  Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

Here, Trooper Greer twice asked Bignelli for permission to search before entering the home.  Bignelli, telling Greer that he "could not enter on a smell," twice denied Greer permission to search.  Only after the officers had entered the house and were upstairs looking in the bathroom and bedroom, did Bignelli run up the stairs and tell Greer that "none of this was necessary, that he was willing to cooperate with" the officers.  Greer verified

-

Bignelli's offer and asked Bignelli for consent to search. Bignelli consented, saying, "You're going to find it anyway. I might as well just speed up the process so I can go to bed and get some sleep."

Having refused consent to search his home twice before consenting, Bignelli clearly knew he had a right to refuse consent. There is no evidence in the record that any of the officers displayed a weapon or used language or a tone of voice that suggested compliance with their request to search was mandatory. Bignelli was not restrained by the police. The evidence sufficiently supports the trial court's finding that the Commonwealth met its burden of proving that Bignelli's consent was freely and voluntarily given. Moreover, having found that the warrantless entry of Bignelli's house was lawfully made, Bignelli's claim that his consent was coerced by the officers' warrantless entry must fail. See Reynolds, 9 Va. App. at 440, 388 S.E.2d at 665.

In summary, we find that the warrantless entry was lawful and that the consent to search was properly obtained. The trial court did not, therefore, err in refusing to suppress the drugs and other evidence seized.

Accordingly, we affirm the trial court's decision to overrule Bignelli's motion to suppress the drugs and other evidence seized and affirm Bignelli's convictions.

Affirmed.

-