COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


GARY JEROME PALMER
                                        MEMORANDUM OPINION[*]
v.        Record No. 2213-95-1      BY JUDGE JOSEPH E. BAKER
                                        DECEMBER 17, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Alfred W. Whitehurst, Judge

            Jennifer T. Stanton (Stowe & Stanton, P.C.,
            on brief) for appellant.

            Daniel J. Munroe, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Gary Jerome Palmer (appellant) appeals from his bench trial

convictions by the Circuit Court of the City of Norfolk (trial

court) for second offense possession of cocaine with intent to

distribute in violation of Code § 18.2-248, possession of a

firearm while in possession of cocaine with intent to distribute

in violation of Code § 18.2-308.4, and possession of a firearm

after having been convicted of a felony in violation of Code

§ 18.2-308.2.  Appellant contends that the trial court erred when

it refused to suppress the cocaine and firearm evidence, in

admitting the certificate of analysis of the cocaine into

evidence, and in finding that the chain of custody of the drugs

was not broken.  Finding no error, we affirm the judgment of the

trial court.
_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

In an appeal from an adverse ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party below and grant all reasonable inferences fairly deducible therefrom. <u>Williams v. Commonwealth</u>, 4 Va. App. 53, 58, 354 S.E.2d 79, 82 (1987); <u>Fore v. Commonwealth</u>, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, <u>cert. denied</u>, 449 U.S. 1017 (1980). The finding of the trial court will not be disturbed unless it is not supported by the evidence and plainly wrong, <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), and the burden is upon appellant to show that the trial court's ruling constituted reversible error. <u>Fore</u>, 220 Va. at 1010, 265 S.E.2d at 731. Our review of the record includes evidence adduced at both the trial and the suppression hearing. <u>DePriest v. Commonwealth</u>, 4 Va. App. 577, 583, 359 S.E.2d 540, 542–43 (1987), <u>cert. denied</u>, 488 U.S. 985 (1988).

Appellant first contends that the evidence fails to show that the arresting officer, Detective Richard A. Scarola (Scarola), articulated reasonable suspicion to justify a <u>Terry</u> stop. We disagree. <u>Terry</u> declared that the Fourth Amendment does not proscribe all seizures, only those that are unreasonable. <u>Terry v. Ohio</u>, 392 U.S. 1, 9 (1968); <u>see also</u> <u>Hogan v. Commonwealth</u>, 15 Va. App. 355, 367–68, 423 S.E.2d 841, 849–50 (1992), and cases there cited.

There is no litmus test for reasonable suspicion. <u>Harmon v. Commonwealth</u>, 15 Va. App. 440, 444–45, 425 S.E.2d 77, 79 (1992).

Each instance of police conduct must be judged for reasonableness in light of the particular circumstances. Castenada v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (citing Terry, 392 U.S. at 21).

> The analysis proceeds with various objective observations, information from police reports if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductions--inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers.

United States v. Cortez, 449 U.S. 411, 418 (1981). In determining what cause is sufficient for a police officer to stop a person, "cognizance must be taken of the 'totality of the circumstances--the whole picture.'" Williams, 4 Va. App. at 65, 354 S.E.2d at 85. The totality of the circumstances includes the consideration that a trained law enforcement officer may be able to perceive and articulate meaning in given conduct which would not be perceived by an untrained person. United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982). The officer's perception need not rise to the level of probable cause; rather, the officer must only possess a reasonable, articulable suspicion that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989).

> The Fourth Amendment does not require a
> policeman who lacks the precise level of
> information necessary for probable cause to
> arrest to simply shrug his shoulders and
> allow a crime to occur or a criminal to
> escape.  On the contrary, Terry recognized
> that it may be the essence of good police
> work to adopt an intermediate response.  A
> brief stop of a suspicious individual, in
> order to determine his identity or to
> maintain the status quo momentarily while
> obtaining more information, may be most
> reasonable in light of the facts known to the
> officer at the time.

Williams, 4 Va. App. at 65, 354 S.E.2d at 86 (quoting Adams v. Williams, 407 U.S. 143, 145-46 (1972).

In the case before us, eight members of the Norfolk Police Vice-Narcotics Unit were armed with information that illegal narcotics distributions were reputed to be taking place in a particular block of an area managed by the Norfolk Redevelopment and Housing Authority.  The officers were patrolling the area at 2:00 p.m. on February 20, 1995, in two unmarked cars.  Detective Richard Scarola, a seventeen-year veteran of the Norfolk Police Department who had been assigned to vice-narcotics[1] for the last nine years, was among the eight officers.

Scarola exited from one of the unmarked police vehicles and entered the reputed block where a playground facility was located.  As Scarola approached the playground, he observed seven or eight men in the area.  They did not appear to be playing on the playground.  Scarola observed appellant whose back was

[1]During that period, Scarola had made "a few hundred" arrests for narcotics violations.

- 4 -

partially turned toward him.  Appellant appeared to be talking to another man directly in front of him.  Appellant had his right hand out, palm up, and made a motion as if he were placing something in the other man's hand.

Scarola was approximately twenty-five feet away when he heard someone yell "Five-0," a street term used to indicate that police are in the area.  Appellant turned in the direction of Scarola and then turned the opposite way and ran from Scarola's view.

Considering Scarola's knowledge of the totality of the circumstances, his training and experience as a narcotics investigator, and appellant's flight, Scarola articulated reasonable suspicion that criminal activity may have been afoot.  This reasonable suspicion justified further investigation.

Appellant also argues that Scarola did not have probable cause to arrest him.  We disagree.

Scarola pursued appellant behind a brick shed.  At this point Scarola was the only officer in the immediate area. Appellant was out of sight for fifteen to thirty seconds.  When Scarola caught up with appellant, he observed appellant withdrawing his hand from a trash can and simultaneously heard the "thud" of something heavy hitting the trash can.  Appellant then turned and faced Scarola.  Scarola asked appellant "to let me see your hands."  Instead of responding as requested, appellant placed his hands out of sight underneath his sweatshirt

near the waist of his pants. Scarola, "worried for [his] safety and any other investigator's safety," "reached and grabbed" for appellant's hands so that he could see them. As Scarola contacted appellant's arm, both men fell to the ground. After a short wrestle, and as one of the other officers came up to assist, Scarola "stood [appellant] back up, placed him on a wall and arrested him." Scarola then walked over to the trash can, seven or eight feet away, opened it and found a loaded gun and beeper inside. Thereafter, for his protection and incident to the arrest, Scarola searched appellant and found bags of cocaine.

We hold that there was no violation of appellant's Fourth Amendment rights and that Scarola had probable cause to arrest appellant. In Williams, 4 Va. App. at 67, 354 S.E.2d at 87, this Court clearly established that suspicion of narcotics possession and distribution gives rise to an inference of dangerousness. To hold otherwise would be an invitation to violence in what is always a potentially explosive situation. Id. The record before us establishes that Scarola had reasonable suspicion that drug activity was afoot. When someone yelled out "Five-0" in a reputed narcotics transaction area where appellant was observed passing something to another person, thereby alerting him to police presence in the area, appellant fled. Appellant's "flight" in the face of lawful authority, with the other evidence in the record, supplied reasonable suspicion, invited pursuit by the officer, and colored conduct that may have appeared innocent

to the untrained observer.  See Quigley v. Commonwealth, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992) (quoting United States v. Lane, 909 F.2d 895, 899 (6th Cir. 1990), cert. denied, 498 U.S. 1093 (1991)); Buck v. Commonwealth, 20 Va. App. 298, 302-03, 456 S.E.2d 534, 535-36 (1995).  When Scarola commanded appellant to show his hands, he refused and concealed them from view. Appellant placed his hands under his sweatshirt at the waistline of his pants where he would likely have concealed a weapon if he were carrying one.

> Probable cause to justify an arrest means, . . . facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  The evidence needed to establish probable cause is more than a mere suspicion, rumor, or strong reason to suspect but less than evidence sufficient to convict.

United States v. Williams, 10 F.3d 1070, 1073-74 (4th Cir. 1993) (citations omitted), cert. denied, 115 S. Ct. 313 (1994).  At this point in time, Scarola had sufficient facts and circumstances to warrant his belief that appellant had committed, was committing, or was about to commit an offense.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted).  Appellant argues that the certificate of

analysis should not have been admitted into evidence because it did not comport with Scarola's testimony that he recovered twenty individually-wrapped bags of cocaine from appellant. However, a comparison of the request for laboratory examination form and the certificate of analysis shows the two documents both contain the names of appellant and the investigating officer, and the case number assigned by the lab. This information coincides to connect the drug analyzed and referenced in the certificate to the substance recovered by Scarola. See Crews v. Commonwealth, 18 Va. App. 115, 120, 442 S.E.2d 407, 409 (1994). Any discrepancy in Scarola's testimony about the number of baggies of cocaine he submitted addressed the weight to be given the evidence, not its admissibility. "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990); see also Gosling v. Commonwealth, 14 Va. App. 158, 166, 415 S.E.2d 870, 874 (1992). Therefore, the trial judge did not abuse his discretion in admitting the certificate.

Scarola testified that he took custody of the drugs from appellant and took them to his office. He sealed the drugs in the plastic bag that the drugs were in at trial, labeled the bag, and placed it into his evidence locker. He later took the drugs to the police department's property and accounting division where

another number was assigned to the evidence.  Scarola then took the drugs to the forensic laboratory and gave the evidence to the state representative who logged the information in a book and gave Scarola a receipt.  Scarola testified that the drugs were in substantially the same condition from the time he received them from appellant until he took the drugs to the laboratory.

Thus, the Commonwealth showed with reasonable certainty that the evidence had not been altered, substituted, or contaminated prior to analysis.  Scarola explained that he thought there were twenty bags of cocaine rather than two, as stated on the certificate of analysis, but that he was testifying from memory. Further, appellant did not "offer any evidence of mishandling or tampering to rebut the Commonwealth's proof of chain of custody." See Brown v. Commonwealth, 21 Va. App. 552, 557, 466 S.E.2d 116, 118 (1996).  Again, any argument that a break in the chain of custody occurred was based on mere speculation, and the record does not suggest any taint or contamination of the evidence. Therefore, the trial court did not abuse its discretion in admitting the drugs into evidence.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.