COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Clements
Argued at Salem, Virginia


JOEL ROY HAMM

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2926-05-3             JUDGE JEAN HARRISON CLEMENTS
                                                         APRIL 3, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PATRICK COUNTY
Martin F. Clark, Jr., Judge

Stacie A. Cass, Assistant Appellate Defender (Office of the
Appellate Defender, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Joel Roy Hamm was convicted on his conditional plea of guilty of possessing

methamphetamine, in violation of Code § 18.2-250.[1]  On appeal, he contends the trial court erred

in denying his motion to suppress the methamphetamine found on his person by the police as the

result of a search that violated his Fourth Amendment rights.  We agree and reverse the trial

court's judgment and Hamm's conviction.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of contempt of court for failing to report to his probation
officer, in violation of Code § 18.2-456.  That matter is not before us in this appeal.

## I. BACKGROUND

The evidence relevant to this appeal is undisputed. On the night of September 23, 2004, Investigator Katherine Layman and Officer Wilson went to 4024 Cherry Creek Road "to help execute a search warrant" obtained by Investigator Garry Brown. Investigator Layman knew the "location to be the residence of Joel Hamm." She had been to the residence before and knew who Hamm was.

The search warrant was issued "in relation to an offense . . . [of possession with] intent to distribute methamphetamine" and authorized searching the "residence, curtilage, outbuildings, and vehicles associated [with] 4024 Cherry Creek Road . . . [for] illegal drugs, scales, records, and packaging associated [with] the [sale] of illegal drugs, and [for] weapons." Investigator Layman "had seen [the search warrant] in [Investigator] Brown's hands at the office" but had not read it and had not had "a chance to look at it at all." Instead, she "just relied on Investigator Brown telling [her], 'I have a search warrant here. We are going to go to Hamm's place and we're going to execute it."

Investigator Layman and Officer Wilson's duty was "to go to the residence and see if . . . Hamm would come outside." Upon arriving at the residence after dark, they "sat in the driveway with the headlights on." Investigator Brown "was already there" conducting surveillance. When "Hamm walked outside" with "a plate of food in his hand," Investigator Layman and Officer Wilson "exited the vehicle with weapons drawn, approached him, [and] told him that [they] had a search warrant." They were unable to show Hamm the warrant because they "did not have it."

Officer Wilson, who was standing in front of Hamm, was then called away "to help with entry" into the residence. Investigator Layman, who was standing behind Hamm, asked Hamm "if he had anything on him." Hamm did not respond. Without seeking Hamm's consent, Investigator Layman then "reached around in front of [Hamm] to feel his front pocket." In

response, Hamm "twisted to his left." When Investigator Layman then reached around in front of Hamm on the other side and "tried to pat-down" his other front pocket, Hamm "twist[ed] to the right." Hamm continued to twist back and forth to avoid Investigator Layman's attempts to frisk him. He also "tri[ed] to stick his hands into his pockets" and "look[ed] around, not making any comments." "At that point, [Investigator Layman] got very concerned about what [Hamm] had." Based on her experience as a police officer, Hamm's "movements indicated to [Investigator Layman] that he was going to do something." His efforts to avoid being frisked "cause[d] concerns in [her] mind for [her] safety." She thought "he might have a weapon on his person."

Consequently, Investigator Layman "grabbed [Hamm's] arms, handcuffed him behind his back, [and] told him to get on his knees." At that point, Officer Wilson returned, and Investigator Layman started going through Hamm's pockets. Investigator Layman removed a Tylenol bottle, a lighter, a hypodermic needle, a pair of tweezers, a $20 bill, and a receipt from his left front pocket and a screwdriver that was "sticking out" from his left rear pocket. After patting Hamm's left rear pocket and feeling something "hard" that she could not identify, Investigator Layman pulled out a "regular size" metal spoon. Before removing the spoon, Investigator Layman had "no idea what that item might be." She could not "tell whether it was a metal object" but felt "it could have been" a dangerous weapon.

Residue on the spoon was later analyzed and discovered to be methamphetamine. Hamm was indicted for possessing methamphetamine.

Hamm moved to suppress the evidence seized during the search by Investigator Layman, arguing it was obtained in violation of his Fourth Amendment rights. At the conclusion of the suppression hearing, the trial court suppressed the hypodermic needle, Tylenol bottle, $20 bill, and receipt, but denied Hamm's motion to suppress the spoon, which the trial court found was a

weapon.  The trial court subsequently convicted Hamm on his conditional plea of guilty, and this appeal followed.

## II.  ANALYSIS

On appeal, Hamm contends the evidence of the methamphetamine residue discovered on the spoon in his pocket should have been suppressed as the fruit of an unconstitutional search because, among other things, Investigator Layman did not have a reasonable suspicion that he was armed and dangerous and, thus, lacked justification to frisk him for weapons.  The Commonwealth responds that the circumstances surrounding Investigator Layman's encounter with Hamm provided the officer with an adequate basis to frisk Hamm for weapons.[2]  We hold that the evidence of the methamphetamine should have been suppressed because the circumstances preceding Investigator Layman's attempt to frisk Hamm did not create a reasonable suspicion that Hamm was armed and dangerous.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal."  Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).  Thus, while "[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at

---

[2] The Commonwealth conceded at oral argument that Investigator Layman's authority to search Hamm did not arise directly from the search warrant itself but rather from the officer's reasonable belief that Hamm was armed and dangerous.

- 4 -

699), "we review *de novo* the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case," McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc). "Whether the Fourth Amendment has been violated 'is a question . . . to be determined from all the circumstances.'" Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (quoting Ohio v. Robinette, 519 U.S. 33, 40 (1996)).

> In assessing the propriety of the trial court's ruling, we keep in mind that the [F]ourth [A]mendment does not proscribe all searches and seizures, only those that are "unreasonable." Terry v. Ohio, 392 U.S. 1, 9 (1968). Whether a search or seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary government intrusions against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers. United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). In striking this balance in Terry v. Ohio, the Supreme Court concluded that an officer may conduct a pat[-]down search of a suspect's outer clothing if [s]he can "'point to specific and articulable facts which, taken together with rational inferences from those facts,'" reasonably lead [her] to conclude, "in light of [her] experience, that 'criminal activity may be afoot' and that the suspect 'may be armed and presently dangerous.'" Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983) (quoting Terry, 392 U.S. at 21, 30), cert. denied, 465 U.S. 1104 (1984).

Stanley v. Commonwealth, 16 Va. App. 873, 874-75, 433 S.E.2d 512, 513 (1993).

In the context of the execution of a valid search warrant, the balancing of these countervailing concerns may permit a police officer to temporarily detain an occupant of the residence to be searched while the warrant is executed,[3] Williams v. Commonwealth, 4 Va. App. 53, 64-65, 354 S.E.2d 79, 85-86 (1987), and, if circumstances warrant, to frisk the properly detained occupant for concealed weapons, id. at 66-67, 354 S.E.2d at 86-87. Such a "limited pat-down search for weapons" is warranted only if the officer "reasonably believes that the suspect might be armed and dangerous." Id. at 66, 354 S.E.2d at 86.

---

[3] For purposes of this appeal, we will assume, without deciding, that Hamm's detention while the search warrant for the premises was being executed was proper.

"As the foregoing suggests, the authority to conduct a pat-down search does not automatically accompany a [valid] . . . detention. Only where the officer can 'point to particular facts from which [s]he reasonably inferred that the individual was armed and dangerous' is [s]he justified in searching for weapons." Id. at 66-67, 354 S.E.2d at 86 (citations omitted) (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)). "In determining whether an officer's belief is reasonable, 'due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which [s]he is entitled to draw from the facts in light of [her] experience'" as an officer. Servis v. Commonwealth, 6 Va. App. 507, 515, 371 S.E.2d 156, 160 (1988) (quoting Terry, 392 U.S. at 27).

> "Among the circumstances to be considered in connection with this issue are . . . the time of the [detention], whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence." United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977), cert. denied, 435 U.S. 946 (1978). To this, we add the character of the offense which the individual is suspected of committing as a circumstance which the officer may consider. See Terry, 392 U.S. at 28.

Williams, 4 Va. App. at 67, 354 S.E.2d at 86-87.

The dispositive question before us, then, is whether Investigator Layman "articulated specific reasons that would support a reasonable belief that [Hamm] was armed and dangerous." Stanley, 16 Va. App. at 876, 433 S.E.2d at 514. The Commonwealth argues that Investigator Layman "was able to point to" several specific facts from which she could reasonably infer that Hamm was armed and dangerous:

> Specifically, she was on Hamm's property at dark to execute a search warrant of his residence for methamphetamine. She was alone with Hamm as [Officer] Wilson was called to "help with entry into the [residence]." Additionally, Hamm, with his back to Layman, did not respond when she asked him whether he had "anything on him." And, when Layman reached around Hamm's body, both to his right and left, to pat him down, Hamm twisted his

- 6 -

body to prevent her touch, all the while "looking around," saying nothing and going into his pockets.

There are two significant flaws in the Commonwealth's argument. First, nothing in the record indicates that Investigator Layman knew that the search warrant she was helping to execute at Hamm's residence involved methamphetamine or any other illegal drugs or weapons. To the contrary, the record establishes only that the warrant was obtained by Investigator Brown, that Investigator Layman "had seen [the search warrant] in [Investigator] Brown's hands at the office" but had not read it and had not had "a chance to look at it at all," and that the only information she received from Investigator Brown regarding the warrant was that he had a search warrant and they were "going to go to Hamm's place and . . . execute it." Additionally, her sole articulated responsibility in helping Investigator Brown execute the warrant was "to go to the residence and see if . . . Hamm would come outside." Moreover, although Investigator Layman testified that she had been to Hamm's residence before and knew who Hamm was, she did not explain what insight those circumstances provided her in connection with this case. The totality of such scant evidence, even when viewed in the light most favorable to the Commonwealth, does not allow the reasonable inference that Investigator Layman knew the search warrant was to search Hamm's residence for illegal drugs and weapons. Thus, while an officer's awareness that the warrant being executed is to search a residence for illegal drugs and weapons may in some cases permit the officer to reasonably infer that the occupant of the residence being detained is armed and dangerous, see, e.g., Williams, 4 Va. App. at 67, 354 S.E.2d at 87, no such inference reasonably arises from the circumstances articulated here.

Second, in arguing that Investigator Layman could point to Hamm's twisting movements "to prevent [the officer's] touch" and his "'looking around,' saying nothing and going into his pockets" as grounds to reasonably infer Hamm was armed and dangerous, the Commonwealth relies on circumstances that occurred after the officer's efforts to frisk Hamm had already

- 7 -

commenced.  The Commonwealth expressly concedes Hamm's actions were in direct response to Investigator Layman's attempt "to pat him down."  Plainly, a suspect's attempt to avoid a frisk for weapons may not be used by the officer to retroactively justify the frisk.  The officer must be able to reasonably conclude the suspect is armed and dangerous before commencing the frisk.  Indeed, while an "officer [who] has lawfully detained an individual, '. . . is "authorized to take such steps as [are] necessary to protect [her] personal safety and to maintain the status quo during the course of the [detention],"'" Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 128 (1998) (en banc) (quoting Servis, 6 Va. App. at 519, 371 S.E.2d at 162 (quoting United States v. Hensley, 469 U.S. 221, 235 (1985))), "'*[b]efore [the officer] places a hand on the person of a citizen in search of [weapons]*, [s]he must have constitutionally adequate, reasonable grounds for doing so,'" Lett v. Commonwealth, 7 Va. App. 191, 195, 372 S.E.2d 195, 197 (1988) (emphasis added) (quoting Sibron, 392 U.S. at 64).  To hold otherwise would permit the police to attempt to conduct illegal searches and then use the suspect's efforts to avoid the illegal search as a basis for justifying the search.  Consequently, notwithstanding the Commonwealth's claim to the contrary, Investigator Layman may not point to Hamm's actions in response to the officer's attempt to frisk him as a valid basis to reasonably infer that Hamm was armed and dangerous before the officer's efforts to frisk him commenced.[4]

Neither the remaining facts that the Commonwealth claims Investigator Layman could point to—that it was dark, that she was alone with Hamm during the search warrant's execution, and that Hamm did not respond when asked "if he had anything on him"— nor the other circumstances of this case support the conclusion that Investigator Layman had a reasonable suspicion that Hamm was armed and dangerous before she attempted to frisk him.  Indeed,

---

[4] We further note that, in remaining silent and trying to avoid Investigator Layman's attempt to pat him down, Hamm was simply exercising his constitutional rights.

Investigator Layman did not even articulate such a suspicion to the trial court. In fact, she expressly testified that she became concerned that Hamm might be armed and dangerous only after he avoided her attempt to frisk him. Moreover, she articulated no basis for believing, before she attempted to frisk Hamm, that he was armed and dangerous. She did not testify that she saw the screwdriver or any other potential weapon on Hamm's person prior to trying to pat down Hamm's front pockets. Similarly, she did not testify that Hamm acted suspiciously or attempted to avoid the officers prior to the attempted pat down. She did not testify that the fact that it was dark, that she was alone with Hamm, and that Hamm ignored her inquiry whether "he had anything on him" led her to conclude, in light of her experience as an officer, that Hamm was armed and dangerous. We are aware of no case that concludes that such facts, standing alone, give rise to a reasonable suspicion that the person being detained is armed and dangerous. In short, we conclude that Investigator Layman failed to articulate or otherwise point to specific facts or reasons that would support a reasonable, timely belief that Hamm was armed and dangerous.

We hold, therefore, that, at the time the officer attempted to pat Hamm down, she lacked a reasonable, articulable suspicion that Hamm was armed and dangerous.[5] Accordingly, the methamphetamine subsequently discovered on the spoon in Hamm's pocket was the fruit of an unconstitutional search and should have been suppressed.

---

[5] Hamm also argues that, even if Investigator Layman's decision to pat him down for weapons was justified, she exceeded the scope of a protective pat-down search by removing the spoon from his back pocket without a reasonable suspicion that it was a weapon. Because we hold the facts articulated in this case do not provide a lawful basis upon which to uphold Investigator Layman's decision to frisk Hamm, we need not address Hamm's alternate argument.

## III. CONCLUSION

For these reasons, we hold the trial court erred in denying Hamm's motion to suppress the methamphetamine. Accordingly, we reverse and dismiss Hamm's conviction.

<u>Reversed and dismissed.</u>