COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


CHARLTON ALI GANTT

                                                     MEMORANDUM OPINION[*] BY

v.      Record No. 2966-07-1                      JUDGE WILLIAM G. PETTY
                                                SEPTEMGER 23, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Following a bench trial, appellant Charlton Ali Gantt was convicted of larceny from a

person in violation of Code § 18.2-95. He challenges that conviction on appeal, arguing (1) the trial

court erred in denying his motion to suppress the in-court and out-of-court identifications and

(2) the evidence is insufficient to support his conviction. We disagree and affirm the conviction.

I.

On the afternoon of November 6, 2003, the victim, who worked for a check-cashing service,

picked up a bag containing over $60,000 in cash from a bank in Virginia Beach. As he walked

through the bank parking lot towards his car, he noticed a man walking towards him. The victim

thought that the man was just going to pass by him, but instead the man grabbed the money bag.

The victim and the thief struggled over the bag for several seconds. During that struggle, the victim

and his assailant were face-to-face. The victim later testified that the light was good in that area of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the parking lot and that there was nothing obstructing his view of the thief's face. During the struggle, the victim grabbed the vest the thief was wearing. The thief abandoned the vest and escaped with the money. The victim pursued him for a short distance, getting "a good look at his height and weight."

Later that same day, the victim gave a description of the thief to the police from which the police made a composite sketch. The victim testified at trial that the composite sketch, which was admitted into evidence, "accurately depict[ed]" the thief. The victim described the thief as being between "five eight, five ten, about 100 to 155 pounds, medium build" and that he "had no discernable facial hair" although the composite sketch showed the suspect with a thin moustache. The victim also described the individual as having a "do-rag covering his head." As a part of their on-going investigation, police showed the victim photographic lineups on three different occasions through 2003 and 2004. The victim described the lineups as consisting of single photographs in groups of six. On each occasion, the victim identified "somebody in the group as appearing close to or approximately like the suspect . . . " but never identified anyone as the thief.

In January 2006, Detective Schubmehl, who was investigating the case, called the victim to inform him that the police were about to make an arrest based on a DNA match on the thief's vest. About two weeks later, the victim was called to testify in a preliminary hearing. The detective met with the victim approximately an hour or two before the preliminary hearing. During their meeting, the detective showed the victim a photograph of Gantt taken about "a year . . . or so" before the hearing. The victim stated, "I'll never forget his face" when he saw Gantt's photo before the preliminary hearing. At the preliminary hearing, the victim explained that he could identify Gantt as the thief because he remembered his eyes and the "outline of his face." The victim concluded that he was "a hundred percent certain" that Gantt was the person who stole the money from him.

- 2 -

The trial court denied Gantt's motion to suppress and made the following findings:

> I do believe that the process outside of the courtroom was unduly suggestive.
>
> Now we get to the . . . list of five things. And one of the things that tilts this over to the Commonwealth's side on that issue is the . . . composite that was done near in time to the crime. . . . I mean if I was sitting on a jury and looking at this picture and looking at the defendant, it's close. Now, the victim also went through . . . [t]hree photo line-ups. And while he looked at them and said close, he didn't misidentify anyone. . . . [H]e was clear to not pick someone that he didn't believe was the right person. His testimony on the stand today did kind of go around a little bit; but when he got to the point of his certainty and the attentiveness and actually the comment to the police officer – and I think I did write it down, I'll never forget his face – convinced me.
>
> The out-of-court is in, and the in-court is in. The motion to suppress is denied.

At trial, Sara Seashols, the forensic scientist who conducted the DNA recovery and analysis on the vest recovered from the scene, testified for the Commonwealth. In 2004, Seashols analyzed the navy blue vest that was recovered from the thief at the scene. Seashols found "quantifiable DNA" from the zippered pockets on the vest and discovered that it was made up of a mixture of DNA profiles, or that there was more than one person who contributed DNA to the vest.

Later, Seashols compared buccal swabs taken from Gantt with the DNA profile she had developed from the vest. Seashols testified that Gantt "could not be elimated as a contributor to the profile," but that at least one other male person left DNA in the jacket, and that others could have worn the jacket without leaving DNA behind.

At the conclusion of the evidence, Gantt moved to strike the evidence, arguing that it was insufficient to prove that he "was the person that committed this crime." The trial court denied his motion and concluded that Gantt was guilty of the crime. The court relied upon the victim's identification and the corroborating DNA evidence in coming to its conclusion. The court

- 3 -

subsequently sentenced Gantt to five years incarceration and suspended the sentence. This appeal followed.

II.

Motion to Suppress

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). In reviewing the record, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." Id. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review *de novo* the trial court's application of legal standards to the particular facts of the case. Ornelas, 517 U.S. at 699.

Gantt contends that the victim's identification of him as the thief should have been suppressed, as it was unreliable because of the detective's unduly suggestive photograph identification procedure. In this case, the trial court held that the detective's identification procedure was unduly suggestive,[1] but then concluded that the victim's identification of Gantt was reliable. Thus, the inquiry on appeal is whether the victim's identification of Gantt was "'nevertheless so reliable . . . that there is no substantial likelihood of misidentification.'" Miller v. Commonwealth, 7 Va. App. 367, 373, 373 S.E.2d 721, 724 (1988) (quoting Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986)). In evaluating the reliability of a suggestive identification, we look to the totality of the circumstances and consider factors including:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty

---

[1] The Attorney General does not challenge the trial court's holding that the identification procedure was unduly suggestive. Thus, this issue is not before us.

> demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

The application of this standard to the identification in this case supports the trial court's finding that the identification was not so unreliable that there was a substantial likelihood of misidentification. Here, the victim testified that he had a good opportunity to view the thief at the time of the crime: the crime took place in broad daylight, and the thief did not have anything obscuring his face; further, the victim chased his assailant, giving him the opportunity to observe the thief's build. The victim also testified that during their struggle, he and his assailant were face-to-face and that he was concentrating on the thief's face during the struggle. The victim also demonstrated a high level of certainty both out-of-court and in-court. The victim told the detective that he would "never forget [the thief's] face" when he saw a photograph of Gantt, and he testified that he was "a hundred percent certain" that Gantt was the thief.

Significantly, the trial court found that the composite sketch made from the victim's description of the thief immediately following the crime resembled Gantt. Hence, we conclude that the victim's prior description of Gantt was accurate. We also note in the totality of the circumstances that the victim had viewed three previous photographic lineups before Gantt was arrested, but he never misidentified anyone as the thief.

We are aware that over two years elapsed between the crime and the identification. However, given the other indicia of reliability in this case, we cannot say that this delay rendered the victim's identification so unreliable as to lead to a substantial likelihood of misidentification. See Satcher v. Commonwealth, 244 Va. 220, 250, 421 S.E.2d 821, 839 (1992) (holding that the identification of the defendant was reliable although the identification was fifteen months after

the crime and concluding that "the lapse of time alone is not sufficient to render an identification unreliable as a matter of law").

We conclude that the trial court correctly refused to suppress the identification evidence.

### Sufficiency of the Evidence

Next, Gantt argues that the evidence was insufficient to show that he was the individual who stole the money. When considering the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see Code § 8.01-680. We are mindful that "great deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988).

Here, the trial court relied upon the victim's identification of Gantt as the thief and the corroborating DNA evidence from the vest to determine that Gantt committed this crime. We cannot say that the court erred in doing so. As we discussed *supra*, the victim's identification of Gantt was reliable and the DNA evidence further linked Gantt to the crime. Accordingly, we hold that the evidence adduced at trial was sufficient to sustain his conviction.

### III.

Based on the foregoing discussion, we affirm Gantt's conviction.

Affirmed.